IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DEREK C. O.,[1]                           6:18-cv-00735-BR

          Plaintiff,                      OPINION AND ORDER

v.

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.


KATHERINE L. EITENMILLER
Harder, Wells, Baron & Manning, P.C.
474 Willamette St.
Eugene, OR  97401
(541) 686-1969

          Attorneys for Plaintiff

BILLY J. WILLIAMS
United States Attorney
RENATA GOWIE
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

_____

          [1] In the interest of privacy this Court uses only the first
name and the initial of the last name of the nongovernmental
party in this case.  Where applicable, this Court uses the same
designation for the nongovernmental party's immediate family
member.


1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**HEATHER L. GRIFFITH**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-3709

         Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff Derek C. O. seeks judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) in which the Commissioner denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.


## ADMINISTRATIVE HISTORY

On February 4, 2014, Plaintiff protectively filed his

application for DIB benefits.  Tr. 18, 157-63.[2]  Plaintiff

alleges a disability onset date of July 5, 2013.  Tr. 18, 157.

Plaintiff's application was denied initially and on

reconsideration.  An Administrative Law Judge (ALJ) held a

hearing on February 1, 2017.  Tr. 67-103.  Plaintiff and a

vocational expert (VE) testified at the hearing.  Plaintiff was

represented by an attorney at the hearing.

On May 9, 2017, the ALJ issued an opinion in which he found

Plaintiff is not disabled and, therefore, is not entitled to

benefits.  Tr. 18-30.  On May 11, 2017, Plaintiff requested

review by the Appeals Council.  Tr. 155.  On February 20, 2018,

the Appeals Council denied Plaintiff's request to review the ALJ's

decision, and the ALJ's decision became the final decision of the

Commissioner.  Tr. 1-3.  *See Sims v. Apfel*, 530 U.S. 103, 106-07

(2000).

On April 26, 2018, Plaintiff filed a Complaint in this

Court seeking review of the Commissioner's decision.

---

[2]  Citations to the official Transcript of Record (#9) filed
by the Commissioner on November 23, 2018, are referred to as
"Tr."

## BACKGROUND

Plaintiff was born on January 5, 1986. Tr. 29, 157. Plaintiff was 27 years old on his alleged disability onset date. Tr. 29. Plaintiff has at least a high-school education. Tr. 29. Plaintiff has past relevant work experience as a cashier, assistant manager, store laborer and sales attendant. Tr. 29.

Plaintiff alleges disability due to schizophrenia. Tr. 105.

Except as noted, Plaintiff does not challenge the ALJ's summary of the medical evidence. After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence. *See* Tr. 23-29.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). It is more than a mere scintilla [of evidence] but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for evaluating a claimant's testimony, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th

Cir. 2008).  Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.   The Regulatory Sequential Evaluation

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity (SGA).  20 C.F.R. § 404.1520(a)(4)(i).  *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. § 404.1509, 404.1520(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the

listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. § 404.1520(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines (or the grids) set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since July 5, 2013, Plaintiff's alleged disability onset date. Tr. 20.

At Step Two the ALJ found Plaintiff has the severe impairments of schizophrenia and major depressive disorder. Tr. 20-21.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of

the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 21.  The ALJ found Plaintiff has the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations:  can only perform simple, routine, and repetitive tasks; can occasionally respond appropriately to supervisors, coworkers, and the public; can only make simple work-related decisions relating to changes in the work setting; and requires time "off task" that can be accommodated by normal breaks.  Tr. 22.

At Step Four the ALJ concluded Plaintiff is unable to perform his past relevant work.  Tr. 29.

At Step Five the ALJ found Plaintiff can perform other jobs that exist in the national economy such as industrial cleaner, laboratory-equipment cleaner and hand-packager.  Tr. 30. Accordingly, the ALJ found Plaintiff is not disabled.  Tr. 30.


## DISCUSSION

Plaintiff contends the ALJ erred when he failed (1) to provide clear and convincing reasons for discounting Plaintiff's subjective symptom testimony; (2) to provide clear and convincing reasons for rejecting the medical opinions of examining physicians Scott Alvord, Psy.D., and Gregory Cole,

Ph.D.; and (3) to consider properly the lay-witness testimony of Joseph Beckenhauer and Joy Smoldt, Plaintiff's former employers, and Leesa Decker, Plaintiff's mother.

**I.   The ALJ did not err when he found Plaintiff's testimony was not fully credible.**

Plaintiff contends the ALJ erred when he failed to provide clear and convincing reasons for discounting Plaintiff's symptom testimony.

**A.   Standards**

The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)(quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). The claimant is not required to show that his "impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Garrison*, 759 F.3d at 1014 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). A claimant is not required to produce "objective medical evidence

of the pain or fatigue itself, or the severity thereof." *Id*.

If the claimant satisfies the first step of this analysis and there is not any affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15. *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). General assertions that the claimant's testimony is not credible are insufficient. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

**B.  Analysis**

The ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 23.

### 1. Medical Evidence

Plaintiff described in his Adult Function Report a history of psychosis that (1) causes him to be suspicious; (2) interferes with his sleep; (3) causes him difficulty in completing tasks at work; and (4) creates problems with maintaining relationships, keeping a schedule, and attending to tasks. Tr. 23. Plaintiff also indicated the "voices" he "experiences" make it difficult for him to communicate and cause memory problems. Tr. 23. Plaintiff contends the ALJ "provided a cursory summary of the treatment record and improperly cherry-picked the evidence to focus on periods of improved symptoms." Pl.'s Brief (#13) at 14.

The ALJ found Plaintiff's symptom testimony is not consistent with the medical evidence. For example, the ALJ noted Plaintiff was hospitalized in August 2013 with poorly controlled schizophrenia, but Plaintiff was merely counseled to exercise regularly, to eat healthy, and to seek mental-health services when he was discharged. Tr.23, 262-64. The ALJ also noted numerous instances between 2014 and 2016 when Plaintiff reported a decrease in his symptoms as a result of taking his medications, that he was doing "pretty good," and that his situation was stable. Tr. 24. In addition, the ALJ noted the

record reflects Plaintiff's mental-status examinations were mostly within normal limits, that he had a cooperative attitude, that his thought processes were goal-directed, and that there were not any concerns about his intellectual functioning. Tr. 24.

### 2. Work and Other Activities

The ALJ also discounted Plaintiff's symptom testimony based on his work and other activities. Tr. 24-25. For example, in March 2014 Plaintiff participated in vocational rehabilitation services. In April 2014 Plaintiff interviewed for a part-time job, but he later obtained a full-time position at a cleaning company. Tr. 24, 80, 347. In June 2014 Plaintiff reported to his vocational counselor that he was working a "double shift" the next day, and he denied having any concerns about his employment. Plaintiff also stated collecting disability was "more important" than working so he could "focus on his future." Tr. 24, 330, 407. In September 2014 his vocational-rehabilitation file was closed because of his continued employment. Tr. 260.

In June 2016 Plaintiff reported to his vocation counselor that he wanted to quit his job because he did not like it, but he was concerned about losing his "section 8" housing.

Plaintiff did not express any need to quit his job due to his impairments.  Tr. 25, 883.

In November 2016 Plaintiff told his vocational counselor that he was no longer interested in "supported employment" because he was already working and "that was keeping his schedule busy."  Tr. 25, 855.

The ALJ also noted Plaintiff was engaged in daily activities that were inconsistent with his symptom testimony. For example, Plaintiff indicated his hobbies were watching television, painting, and reading and writing poetry.  Tr. 25, 316.  Plaintiff washes dishes twice a week; sweeps, mops, and vacuums twice a month; and does his laundry weekly.  Tr. 25, 316.  In September 2015 Plaintiff was seeking a community-college education.  Tr. 25, 708.  In March 2016 Plaintiff was working up to five days per week and attending school two days per week.  Tr. 25, 912.  In his Adult Function Report Plaintiff described performing his personal care, working on an art project, writing grant applications, attending mental-health appointments, and working at a job.  Tr. 26, 210.  The ALJ noted Plaintiff had been able to live on his own and to maintain his place of living for over a year.  Tr. 26.

Although Plaintiff contends the records show his

activities support his testimony, an alternative interpretation of the record is not sufficient.  As long as there is substantial evidence to support the ALJ's interpretation of the evidence and that interpretation is based on correct legal standards, the court must uphold the ALJ's determination.  *See Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).

On this record the Court concludes the ALJ did not err when he discounted Plaintiff's symptom testimony and found it was not fully credible because the ALJ provided clear and convincing reasons supported by substantial evidence in the record for doing so.

**II.  The ALJ erred when he failed to provide clear and convincing reasons for rejecting the medical opinions of Dr. Alvord and Cole, Plaintiff's examining physicians.**

Plaintiff contends the ALJ erred when he rejected the opinions of Drs. Alvord and Cole.

**A.  Standards**

"In disability benefits cases . . . physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability — the claimant's ability to perform work." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).  "In conjunction with the relevant regulations, [courts] have . . . developed standards that guide [the] analysis of an

ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008). Specifically, the court must "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Garrison*, 759 F.3d at 1012. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Id.* Although the opinion of a treating physician is entitled to greater weight than that of an examining physician, the opinion of an examining physician is entitled to greater weight than that of a nonexamining physician. *Ryan,* 528 F.3d at 1198. "The weight afforded a nonexamining physician's testimony depends 'on the degree to which [he] provide[s] supporting explanations for [his] opinions.'" *Id.* (quoting 20 C.F.R. § 404.1527(d)(3)).

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* Even when contradicted, a treating or examining physician's opinion is still owed

deference and will often be "entitled to the greatest weight

. . . even if it does not meet the test for controlling weight."

*Orn v. Astrue,* 495 F.3d 625, 633 (9th Cir. 2007).  An ALJ can

satisfy the "substantial evidence" requirement by "setting out a

detailed and thorough summary of the facts and conflicting

clinical evidence, stating his interpretation thereof, and

making findings." *Reddick,* 157 F.3d 715, 725 (9th Cir. 1998).

"The ALJ must do more than state conclusions.  He must set forth

his own interpretations and explain why they, rather than the

doctors', are correct." *Id.* (citation omitted).

   **B.   Analysis**

      **1.   Dr. Cole**

         On June 11, 2014, Plaintiff was examined by

Dr. Cole, who performed a psychodiagnostic evaluation.  Tr. 313-

17.  Dr. Cole observed Plaintiff's "mood was good, and his

affect was congruent with his verbalizations."  Tr. 315.

Plaintiff demonstrated organized thought processes and content,

and he had fair insight and judgment.  Tr. 315.  Tests indicated

Plaintiff has some problem with attention and concentration and

that he exhibited slightly below-average intellectual

capabilities, but he demonstrated average immediate memory and

above-average delayed memory.  Tr. 316.

Dr. Cole diagnosed Plaintiff with "Unspecified Schizophrenia Spectrum and Other Psychotic Disorder; and Unspecified Anxiety Disorder." Tr. 317. Dr. Cole opined Plaintiff would benefit from follow-up psychological services and behavioral-medication management. Dr. Cole found Plaintiff has mild problems in attention and concentration, but he was able to sustain simple routine tasks and was able to complete simple multiple-step tasks. Tr. 317. Dr. Cole noted Plaintiff's "level of anxiety, and the potential for increased psychotic symptomatology under stress, would be the primary factors, which would impact his overall level of vocational success." Tr. 317.

The ALJ agreed the tests supported Dr. Cole's findings, but the ALJ noted Dr. Cole "did not list an explicit residual functional capacity." Tr. 27. The ALJ, therefore, gave only "partial weight" to Dr. Cole's assessment. Tr. 27.

A doctor is not required to specify a residual functional capacity for a claimant in order to have his opinion credited. Social Security Regulations provide: "Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner." 20

C.F.R. § 404.1527(d)(2).  Accordingly, it was improper for the
ALJ to reject Dr. Cole's assessment because it did not set out
"an explicit residual functional capacity."

The ALJ also rejected Dr. Cole's opinion on the
ground that it was based "mostly" on Plaintiff's self-reporting.
Tr. 27.  Although a physician's opinion of disability "premised
to a large extent upon the claimant's own accounts of his
symptoms and limitations may be disregarded where those
complaints have been properly discounted," that standard does
not apply to a doctor's opinion regarding mental-health issues.

In *Buck v. Berryhill* the Ninth Circuit held a
psychiatrist's report "should not be rejected simply because of
the relative imprecision of the psychiatric methodology . . .
[Citation omitted].  Psychiatric evaluations may appear
subjective, especially compared to evaluation in other medical
fields.  Diagnoses will always depend in part on the patient's
self-report, as well as on the clinician's observations of the
patient.  But such is the nature of psychiatry."  869 F.3d 1040,
1049 (9th Cir. 2017).

On this record the Court concludes the ALJ failed
to provide legally sufficient reasons supported by substantial
evidence in the record for discounting Dr. Cole's opinion.

## 2. Dr. Alvord

On January 18, 2017, Plaintiff was examined by
Dr. Alvord, who performed a psychological evaluation.  Tr. 1003-
09.  Dr. Alvord observed Plaintiff was "generally cooperative
and pleasant, but very flat/blunted regarding his affect" and
his mood was depressed.  Tr. 1006.  Dr. Alvord noted Plaintiff's
thought processes were "significant for mild tangentiality," and
he occasionally appeared to "zone off" or was distracted by what
was possibly "internal stimuli."  Tr. 1006.  Tests indicated
Plaintiff had low-average intellectual functioning and
borderline memory functioning.  Tr. 1007.

Dr. Alvord diagnosed Plaintiff with
"Schizophrenia Paranoid Type vs. Schizoaffective Disorder
Bipolar Type," "Mild Neurocognitive Disorder (secondary to
antipsychotic medications vs. unknown etiology)," "Depressive
Disorder (NOS)," and "Remote History of ETOH/Unknown Substance
Use Disorder."  Tr. 1008.  Dr. Alvord concluded Plaintiff was
"psychiatrically ill," and "his history of occupational
struggles will likely continue."  Tr. 1008.  Dr. Alvord
concluded Plaintiff would have difficulty performing detailed
and complex tasks, accepting instructions from supervisors,
interacting with coworkers and the public, performing work

activities on a consistent basis without special or additional instructions/accommodations, maintaining regular attendance in the workplace, completing a normal workday/workweek without interruptions from a psychiatric condition, and dealing with the usual stress encountered in the workplace.  Tr. 1008-09.

The ALJ gave Dr. Alvord's opinion "partial weight."  Tr. 28.  Although the ALJ credited Dr. Alvord's opinion that Plaintiff could "perform at least simple and repetitive tasks," the ALJ assigned "little weight" to the rest of Dr. Alvord's opinion on the ground that it was "based heavily on the claimant's reporting about his symptoms and conditions."  Tr. 28.  As noted, this is not a proper basis for rejecting the opinion of a physician regarding a claimant's mental-health issues.  *Buck,* 869 F.3d at 1049.

The ALJ also found Dr. Alvord "did not provide any specific reasoning as to why [Plaintiff] would have difficulty maintaining regular attendance in the workplace or acknowledge that [Plaintiff] has worked with his condition in the past," and Dr. Alvord "did not cite to any objective factors to substantiate the findings."  Tr. 28.  The ALJ found "instances of low motivation along with medication non-compliance" contributed to Plaintiff's "problems sustaining

work." Tr. 28.

The ALJ is not required to accept a physician's opinion that is "brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). The ALJ, however, must satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick,* 157 F.3d at 725.

Based on this record the Court concludes the ALJ failed to provide legally sufficient reasons supported by substantial evidence in the record for discounting Dr. Alvord's opinion.

Accordingly, the Court concludes the ALJ erred when he discounted the opinions of Drs. Cole and Alvord, Plaintiff's examining physicians.

## III. The ALJ did not err when he discounted the lay-witness statements.

Plaintiff contends the ALJ erred when he failed to provide germane reasons to discount the lay-witness statements of Joseph Beckenhaur and Joy Smoldt, Plaintiff's former managers, and Leesa Decker, Plaintiff's mother, regarding Plaintiff's limitations.

**A.    Standards**

Lay-witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001).  The ALJ's reasons for rejecting lay-witness testimony must also be "specific." *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1054 (9th Cir. 2006).  Germane reasons for discrediting a lay-witness's testimony include inconsistency with the medical evidence and the fact that the testimony "generally repeat[s]" the properly discredited testimony of a claimant. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  *See also Williams v. Astrue*, 493 F. App'x 866 (9th Cir. 2012).

**B.   Analysis**

**1.   Joseph Beckenhauer and Joy Smoldt**

Beckenhauer was Plaintiff's manager at a Taco Time restaurant.  On February 8, 2017, Beckenhauer submitted a statement to the ALJ.  He noted Plaintiff had good attendance, was always on time, had a positive attitude, and was a good team helper.  Tr. 252.  He stated, however, that Plaintiff had "super high needs," required "near constant supervision and oversight,"

was extremely limited in his comprehension, had poor memory, and required constant re-training on "the simplest of job duties." Tr. 252.

Smoldt was Plaintiff's team leader at Jo's Cleaning Service. She stated Plaintiff was "likeable and showed to work," but he "lacked focus to stay on task or get jobs done." Tr. 255. Smoldt also had to repeatedly show Plaintiff how to do simple tasks, and she often found him "off wandering around on the job," which "created animosity among the team since it was obvious [Plaintiff] was not doing his fair share." Tr. 255.

The ALJ gave these statements "partial weight." Tr. 27. The ALJ concluded the limitations expressed by Smoldt and Beckenhauer were "mostly subjective" and inconsistent with other evidence in the record. Tr. 27. The ALJ instead relied on Dr. Alvord's opinion that Plaintiff could perform at least simple and repetitive tasks "based on objective testing." Tr. 27, 1008.

### 2. Leesa Decker

On April 18, 2014, Decker, Plaintiff's mother, submitted a Third-Party Function Report. Tr. 187-94. On February 8, 2017, she also submitted a statement to the ALJ on

behalf of Plaintiff.  Tr. 253-55.

Decker reported Plaintiff has a very poor memory,
an unpredictable temper, an erratic sleep routine, and often
paces the house during the night.  Plaintiff needs reminders to
take medication, to do personal care, and to complete tasks.
Decker noted Plaintiff has difficulty understanding simple
instructions due to his memory issues and struggles with
paranoia.  Decker also noted, however, Plaintiff completes art
projects, takes care of the family dog, uses the Internet,
prepares simple meals, and completes light chores.

Although the ALJ gave "little weight" to Decker's
statements regarding Plaintiff's limitations and symptoms on the
ground that they were not supported by the medical record, the
ALJ concluded Decker's statements regarding Plaintiff's
activities were consistent with the record overall, which
reflects he is "fairly functional."  Tr. 26.

The ALJ also noted when Plaintiff is medicated
properly and motivated, he is able to attend school and to work.
The ALJ also noted Plaintiff expressed the desire to quit work
for reasons "beyond his impairments."  Tr. 26.

On this record the Court concludes the ALJ did not err
when he discounted the lay-witness statements of Plaintiff's

former employers and Plaintiff's mother because he provided

germane reasons for doing so.


**REMAND**


The Court must determine whether to remand this matter for

further proceedings or to remand for the calculation of

benefits.

The decision whether to remand for further proceedings or

for immediate payment of benefits generally turns on the likely

utility of further proceedings.  *Carmickle*, 533 F.3d at 1179.

The court may "direct an award of benefits where the record has

been fully developed and where further administrative

proceedings would serve no useful purpose."  *Smolen*, 80 F.3d at

1292.

The Ninth Circuit has established a three-part test "for

determining when evidence should be credited and an immediate

award of benefits directed."  *Harman v. Apfel*, 211 F.3d 1172,

1178 (9th Cir. 2000).  The court should grant an immediate award

of benefits when

> (1) the ALJ has failed to provide legally sufficient
> reasons for rejecting such evidence, (2) there are no
> outstanding issues that must be resolved before a
> determination of disability can be made, and (3) it is
> clear from the record that the ALJ would be required

> to find the claimant disabled were such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question:  Whether the ALJ would have to award benefits if the case were remanded for further proceedings.  *Id.* at 1178 n.2.

As noted, the Court concludes the ALJ failed to provide legally sufficient reasons supported by substantial evidence in the record for discounting the opinions of Drs. Cole and Alvord as to Plaintiff's mental health-issues and limitations.  Thus, the ALJ must reconsider the examining physician's opinions to determine whether Plaintiff is disabled.

The Court, therefore, remands this matter to the ALJ for further administrative proceedings consistent with this Opinion and Order.

## **CONCLUSION**

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four

of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 3rd day of June, 2019.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States Senior District Judge